IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01353-NRN

YVETTE CYNTHIA ARCHULETA,

Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Yvette Cynthia Archuleta was not

disabled for purposes of the Social Security Act. AR[2] 44–45. Ms. Archuleta has asked

this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g),

and both parties have agreed to have this case decided by a U.S. Magistrate Judge

under 28 U.S.C. § 636(c). Dkt. #15.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative

law judge ("ALJ") to determine whether the factual findings are supported by substantial

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case: Dkt. ##13, and 13–1 through 13–13.

evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a

reasonable mind might accept as adequate to support a conclusion. It requires more

than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269,

1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed

must, exercise common sense" and "cannot insist on technical perfection." *Keyes-*

*Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the

evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making

determinations,[3] the ALJ found that Ms. Archuleta "has the following severe

impairments: osteoarthritis (OA) of the bilateral CMC joints, wrists, and right hand;

lumber degenerative disc disease (DDD) with radiculopathy; bilateral carpal tunnel

syndrome (CTS); and obesity." AR 36. Ms. Archuleta's medically determinable

impairments of bilateral wrist sprains; insomnia; dysphagia; xerosis; and right lateral

epicondylitis were found to not be severe impairments. AR 37. The ALJ then determined

that Ms. Archuleta alleged, but did not establish the existence of, the following medically

determinable impairments: alcohol use disorder; possible psychotic disorder; left knee

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

pain; muscle spasm; myalgia/dorsalgia; cervicalgia; shortness of breath; or edema. *Id.*

Finally, the ALJ, applying the four areas of mental functioning known as the "paragraph

B" criteria, found that Ms. Archuleta's medically determinable mental impairments of

delusional disorder and cocaine use disorder, considered singly and in combination, did

not cause more than minimal limitation in her ability to perform basic mental work

activities and therefore were nonsevere.

The ALJ then determined at step three that Ms. Archuleta "does not have an

impairment or combination of impairments that meets or medically equals the severity of

one of the listed impairments" in the regulations. AR 38–39. Because he concluded that

Ms. Archuleta did not have an impairment or combination of impairments that met the

severity of the listed impairments, the ALJ found that Ms. Archuleta has the following

residual functional capacity ("RFC"):

> . . . [Ms. Archuleta] has the residual functional capacity to perform a reduced
> range of light work as defined in 20 CFR 404.967(b) and 416.[15]67(b),
> meaning she can lift and carry up to 20 pounds occasionally and 10 pounds
> frequently; she can stand and/or walk for 6 hours in an 8-hour day and sit
> for 6 hours in an 8-hour day. She can never climb ladders, ropes or
> scaffolds. She can occasionally stoop, kneel, crouch, or crawl. She can
> occasionally climbs ramps and stairs. She can occasionally handle and
> finger bilaterally. She should have no exposure to workplace hazards,
> including commercial driving or operating heavy machinery.

AR 40.

The ALJ found that Ms. Archuleta had no past relevant work, and that at 52 years

of age, was an individual closely approaching advanced age. AR 43. Considering her

age, education (at least high school), work experience, and RFC, the ALJ concluded

that there are jobs in significant number in the national economy that Ms. Archuleta can

perform, such as furniture rental consultant and "investigator car dealers accounts." AR

44. Accordingly, Ms. Archuleta was deemed not to have been under a disability from May 23, 2016, through August 1, 2018, the date of the decision. AR 44–45.

**Analysis**

Ms. Archuleta argues that the ALJ's decision should be reversed because his finding that Ms. Archuleta was not disabled is not supported by substantial evidence. Specifically, Ms. Archuleta contends that the ALJ erred (1) by failing to find at step two of his analysis Ms. Archuleta's history of wrist sprains and epicondylitis to be severe; (2) in formulating the RFC by failing to consider wrist sprains and elbow pains as medically determinable impairments; (3) in determining that Ms. Archuleta had the RFC for a reduced range of light duty; (3) by failing to accord the proper weight to a treating source opinion; and (4) in assessing Mr. Archuleta's credibility. The Court finds the ALJ's evaluation of the medical opinions in the record deficient, and reverses and remands on those grounds.

Ms. Archuleta was treated by Dr. Kent Lofley at the Monte Vista Medical Clinic for several years, starting in 2015. From 2015 through 2017, Ms. Archuleta presented with various ailments, including, but not limited to, arm, hand, and wrist pain (AR 297–308); elevated cholesterol (AR 483–86); viral infections (AR 487–496); acute and chronic lower back pain (AR 497–500, 547–61, 565–72, 579–82, 622–26, 630–33, 637–42, 761–64, 776–79); right elbow and shoulder pain (AR 501–514, 579–82); neck and back pain and insomnia (AR 602–13); and left foot and calf pain (AR 614–17, 786–89).

On March 27, 2018, Dr. Lofley completed a form titled "Medical Statement Regarding Low Back Pain for Social Security Disability Claim." AR 795. Dr. Lofley checked the following limitations: "limitation on motion of the spine," "need to change

4

position more than once every two hours," and "lumbar spinal stenosis." *Id.* He indicated that beginning on May 16, 2016, Ms. Archuleta has suffered from moderate pain; is limited to 60 minutes of standing and sitting at one time; can occasionally lift 20 pounds and frequently lift 10 pounds; can occasionally bend and stoop; and cannot walk more than 30 minutes. *Id.* He also stated that Ms. Archuleta is limited to working four hours per day. *Id.*

The ALJ gave this opinion partial weight. AR 42–43. He rejected the standing and sitting limitations as "vague" but accepted the exertional and postural limitations. However, as the Commissioner concedes, the ALJ did not address Dr. Lofley's opinion that Ms. Archuleta was unable to work more than four hours per day.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The Commissioner acknowledges that Dr. Lofley was a treating physician. According to the "treating physician rule," the ALJ will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (citations omitted). Indeed, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). This is due

to the unique perspective the doctor has to medical evidence that cannot be obtained

from an objective medical finding alone or from reports of individual examinations. *See*

*Robinson*, 366 F.3d at 1084.

When assessing how much weight to give a treating source opinion, the ALJ

must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v.*

*Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ must first determine whether the

opinion is conclusive—that is, whether it is to be accorded "controlling weight" on the

matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A

treating source opinion controlling weight if it is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Even if a treating source opinion's is not afforded controlling weight, it is still

entitled to deference, and at the second step, the ALJ must "give consideration to all the

medical opinions in the record" and "discuss the weight he assigns to them." *Mays v.*

*Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). The ALJ

must consider the following factors when evaluating all medical opinions:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor

the Court require a factor-by-factor recitation, but the ALJ's findings must be sufficiently

specific to make clear to any subsequent reviewer the weight given to the medical

opinion, and the reason for that weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Even though an ALJ is not required to discuss every piece of evidence, it must be clear that the ALJ considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting her decision, the ALJ also must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects." *Id.* at 1010.

Here, in making his RFC determination, the ALJ found that Ms. Archuleta can "stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. AR 40. Thus, he implicitly rejected Dr. Lofley's four-hour workday limitation. This is obviously an important, and potentially dispositive, issue: at Ms. Archuleta's hearing, the vocational expert informed the ALJ that a four-hour workday would preclude competitive employment. AR 68-69.

The Commissioner labels the ALJ's failure to mention Dr. Lofley's "extreme and unsupported" limitation a "mistake," and argues that "it is clear" that the ALJ rejected it "since he found that Plaintiff was capable of full-time work in the national economy." Dkt. #18 at 10–11. However, an implicit rejection is not enough; the regulations require, and Ms. Archuleta deserves, that the ALJ make his reasoning explicit. This Court, on review, cannot sift through the record and supply an explanation for the ALJ. This is especially true where, as here, the ALJ did accept some Dr. Lofley's exertional and postural limitations, which makes the Commissioner's argument that Dr. Lofley's opinion was "extreme and unsupported" less than persuasive. Moreover, as Ms. Archuleta points out, there is some evidence in the record to support Dr. Lofley's findings, such as a 60% disability rating for low back pain by a physical therapist on January 26, 2017 (AR 528–

30); the administration of Toradol and Lidocaine injections for back pain in January and February, 2017 (AR 557, 565–68); and a series of lumbar epidural injections thereafter (AR 705–10). Even if the ALJ did not accord Dr. Lofley's opinion with controlling weight, he still should have discussed this and other evidence when considering the requisite factors at the second step of the treating source inquiry.

In sum, Dr. Lofley was a treating physician who saw Ms. Archuleta frequently over several years. His opinion that Ms. Archuleta could work for a maximum of four hours per day was significantly probative of whether Ms. Archuleta was disabled. The ALJ rejected Dr. Lofley's opinion without explanation. The regulations required the ALJ to explain why he rejected it. Accordingly, his decision is not supported by substantial evidence, and must be remanded for further proceedings.[4]

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

Dated this 12th day of February. 2020.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

---

[4] While Ms. Archuleta alleges that other errors were committed by the ALJ, the Court declines to address those alleged errors at this time "because they may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.